UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE DOE FUND, INC.<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>BERKLEY INSURANCE COMPANY<br><br>　　　　　　　　　　Defendant. | Civ. Action No. _____ |

**COMPLAINT**

Plaintiff The Doe Fund, Inc. ("Doe" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against defendant Berkley Insurance Company ("Berkley" or "Defendant"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an insurance coverage action that arises from Berkley's breach of its obligations to defend and indemnify Doe in connection with an underlying action captioned: *Anita Long, Khalid Fritze, Iris Garcia and Frank Bellido v. The Doe Fund and Chemical Specifics, Inc.*, currently pending in the Supreme Court of the State of New York, County of Bronx, Index.: 810555/2022E (the "Underlying Action"), under a Commercial Line Policy, No. HHS857355-14, with $1 million in policy limits (the "Primary Policy"), and an Umbrella Policy, No. HHS 8573556-14, with $10 million in excess policy limits (the "Excess Policy"), both of which Berkley sold to Doe. The Primary Policy and Excess Policy are collectively referred to herein as the "Policies."

2. The Doe Fund is a not-for-profit organization founded in 1987 and dedicated to providing paid transitional work, housing, educational opportunities,

counseling, and career training to people with histories of homelessness, incarceration, and substance abuse.

3. In connection with this mission, The Doe Fund manages and operates buildings and housing in New York City.

4. The Underlying Action seeks damages from Doe for bodily injury allegedly caused by Legionnaires' disease contracted from a cooling tower located on a building managed and operated by Doe.

5. Although the Policies cover damages because of bodily injury caused by an occurrence, Berkley denied coverage for the Underlying Action, arguing that it was barred by a so-called "Communicable Disease Exclusion" ("the Exclusion"). "Communicable Disease" is not defined in the policy.

6. The Exclusion, which Berkley added to the Primary Policy on renewal (and without notice to Doe), purports to exclude coverage for bodily injury arising out of the alleged transmission of a communicable disease.

7. Legionnaires' disease does not qualify as a communicable disease under the Primary Policy, Berkley nevertheless improperly denied coverage on that basis.

8. In this action, Doe seeks a declaratory judgment that Berkley is obligated to provide Doe with insurance coverage under the Policies for the defense and indemnity of the Underlying Action.

9. Doe also seeks damages arising from Berkley's breach of contract for failing to defend Doe in the Underlying Action.

## **THE PARTIES**

10. Doe is a not-for-profit corporation formed pursuant to the laws of the State of New York, with its principal place of business at 345 East 102 Street, #305, New York, New York 10029.

11. Upon information and belief, Berkley is an insurance company incorporated under the laws of Delaware, with its principal place of business in Greenwich, Connecticut, and licensed and authorized to do business in the State of New York.

12. Upon information and belief, Berkley, at all relevant times herein, was engaged in the business of selling insurance policies, including insurance coverage marketed, sold and advertised to protect policyholders from losses resulting from bodily injury.

## **JURISDICTION AND VENUE**

13. This Court has jurisdiction over Berkley because, at all relevant times, the insurance company was authorized to transact business in the State of New York and/or conducts continuous and substantial business in the State of New York.

14. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship in that Doe is a New York nonprofit corporation located in the State of New York, Berkley is incorporated in the State of Delaware and has its principal place of business in Connecticut, and the matter in controversy exceeds $75,000.00.

15. Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391, because Berkley conducts business in this district and a substantial

portion of the events giving rise to the claims for relief pleaded herein occurred within the Southern District of New York.

## THE UNDERLYING ACTION

16. In the summer of 2022, plaintiffs Anita Long, Khalid Fritz, Iris Garcia, and Frank Bellido alleged that they became ill when they all contracted Legionella bacteria and developed Legionnaires' disease. A copy of the First Amended Underlying Complaint "Underlying Complaint" is attached hereto as Exhibit A.

17. The Underlying Complaint alleges that the underlying plaintiffs were infected with Legionella bacteria while in the vicinity of the Jerome Avenue Residences, located at 1325 Jerome Avenue, Bronx, NY 10452 (the "Residences"), allegedly operated, managed, inspected, maintained, and developed by Doe.

18. The Underlying Complaint alleges that Legionella is "contracted by breathing in tiny droplets (mist or vapor) of water contaminated with Legionella bacteria." Ex. A. at ¶ 20.

19. The underlying plaintiffs allege that they contracted Legionnaires' disease by inhaling the legionella bacteria from exhaust vapors emitted by a cooling tower located at the Residences. Ex. A at ¶¶ 30, 38, 37, 55.

20. The Underlying Action asserts claims against Doe for negligence and negligence per se in violation of New York State Sanitary Code, Title 10, Volume A, Part 4 – Protection Against Legionella. Ex. A at ¶¶ 58-96.

## THE PRIMARY INSURANCE POLICY

21. Berkley sold to Doe the Primary Policy for the policy period October 1, 2021 to October 1, 2022, with limits of insurance of $1 million per occurrence and $3 million in the aggregate. A copy of the Primary Policy is attached hereto as Exhibit B.

22. Pursuant to the insuring agreement of the Primary Policy, Berkley agreed that it would:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

Ex. B at § I (1)(a).

23. The Primary Policy applies to "bodily injury" caused by an "occurrence" that takes place in the "coverage territory." Ex. B at § I (1)(b).

24. "Bodily Injury" is defined in the Primary Policy to mean "bodily injury, sickness, or disease sustained by a person. . ." Ex. B at General Liability Broadening Endorsement.

25. "Suit" is defined in the Primary Policy to mean "a civil proceeding in which damages because of "bodily injury" . . . to which this insurance applies are alleged." Ex. B at § V (18).

26. "Occurrence" is defined in the Primary Policy to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B at § V (13).

27. "Coverage territory" is defined in the Primary Policy as "the United States of America . . ." Ex. B at § V (4).

28. The allegations asserted against Plaintiff in the Underlying Action are within the coverage provided under the Primary Policy.

29. The Primary Policy contains an exclusion that in pertinent part, states that coverage does not apply to:

> "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

5

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:
>
> (a) Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;
>
> (b) Testing for a communicable disease;
>
> (c) Failure to prevent the spread of the disease; or
>
> (d) Failure to report the disease to authorities.

Ex B. at Communicable Disease Exclusion, form CG 21 32 05 09.

30. The Exclusion bars coverage only if it is determined that Legionnaires' disease constitutes a "communicable disease" as that term is used in the Policy.

31. The term "communicable disease" is neither defined in the Exclusion nor elsewhere in the Primary Policy.

## THE UMBRELLA POLICY

32. Doe also purchased a Commercial Excess Liability insurance policy from Berkley (Policy No. HHS 8573556-14), with a policy period of October 1, 2021 to October 1, 2022, with limits of insurance of $10 million per occurrence excess of the $1 million per occurrence Primary Policy limit. A copy of the Excess Policy is attached hereto as Exhibit C.

33. The Excess Policy follows form to the Primary Policy:

> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable [Primary Policy] unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply.

Ex. C at Introductory Paragraph.

34. Pursuant to the insuring agreement of the Excess Policy, Berkley agreed that it would:

6

> [P]ay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies. We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance."

Ex. C at § I (1)(a).

35. The Excess Policy's Communicable Disease Exclusion is the same as the Primary Policy's. Ex. C at Communicable Disease Exclusion.

36. The Excess Policy obligates Berkley to defend the Policyholder against covered claims after the Primary Policy is exhausted or if the damages sought are covered by the Excess Policy but are not covered by the Primary Policy. Ex. C at § I (1)(a).

## BERKLEY WRONGFULLY DENIED COVERAGE UNDER THE COMMUNICABLE DISEASE EXCLUSION

37. Doe originally provided notice to its broker Lamb Insurance Services ("Lamb") on May 23, 2022 for potential lawsuits arising out of the New York Department of Health's ("DOH") investigation of Legionnaires' disease at the Residences. A copy of the email notice to Lamb is attached hereto as Exhibit D.

38. On July 12, 2022, Berkley denied coverage for an underlying action captioned: *Harold Hargrave v. The Doe Fund*, currently pending in the Supreme Court of the State of New York, County of Bronx, Index No. 809261/2022E (the "Hargrave Action") under the Primary Policy and Excess Policy that Berkley sold to Doe. A copy of Berkley's "Hargrave Denial Letter" is attached hereto as Exhibit E.

39. Berkley incorrectly argued that the Exclusion applied because the DOH allegedly classified Legionnaires' disease as a communicable disease.

7

40. On August 17, 2022, Lamb requested that Berkley reverse its coverage denial because Berkley's coverage analysis was based on the incorrect position that Legionnaires' disease is a communicable disease barred by the Exclusion. A copy of "Lamb's letter" to Berkley is attached hereto as Exhibit F.

41. On September 7, 2022, Berkley responded to Lamb's letter requesting that Berkley reconsider its coverage position, but Berkley continued to deny Doe's claim for the reasons set forth in its Denial Letter. A copy of Berkley's email to Lamb is attached hereto as Exhibit G.

42. On September 15, 2022, among other things, Lamb advised Berkley that it failed to send a disclaimer to the Plaintiff in the Hargrave Action, in violation of New York Insurance Law § 3420(d)(2). A copy of the Lamb email is attached hereto as Exhibit H.

43. On September 19, 2022, Berkley acknowledged that it failed to send a disclaimer to the Plaintiff in the Hargrave Action in violation of New York Insurance Law § 3420(d)(2). Based solely on its violation of New York Insurance Law § 3420(d)(2), Berkley rescinded its prior denial of coverage and agreed to provide a defense and indemnification for the Hargrave Action. A copy of Berkley's letter is attached hereto as Exhibit I.

44. On September 29, 2022, Lamb notified Berkley of the Underlying Action A copy of the First Notice of Loss and Incident Report and accompanying documents are attached hereto as Exhibit J.

45. On October 7, 2022, Berkley denied coverage for the Underlying Action. Like the Hargrave Action, Berkley incorrectly argued that the Exclusion applied

because the DOH allegedly classified Legionnaires' disease as a communicable disease. A copy of Berkley's "Long Denial Letter" is attached hereto as Exhibit K.

46. Even if the DOH's position were dispositive as to the meaning of the insurance policy, which it is not, the DOH has not classified Legionnaires' disease as a communicable disease. Instead, Section 2.1 of the New York State Sanitary Code, upon which Berkley relies, lists Legionella as one of the diseases that falls within any one of several different disease classifications, which include "infectious" diseases, "contagious" diseases, "communicable" diseases, "rapidly emergent" diseases, and diseases that are "a significant threat to public health."

47. In pertinent part, N.Y. Sanitary Code Section 2.1 discusses these broad and distinct classifications of diseases as follows:

> When used in the Public Health Law and in this Chapter, the term infectious, contagious or communicable disease, shall be held to include the following diseases and any other disease which the commissioner, in the reasonable exercise of his or her medical judgment, determines to be communicable, rapidly emergent or a significant threat to public health . . .:
>
> Legionellosis…

10 N.Y.C.R.R. § 2.1.

48. Section 2.1 does not specify whether Legionnaires' disease qualifies as a "communicable" disease as opposed to an "infectious" disease, a "contagious" disease, or constitutes "any other disease" that could be "rapidly emergent or a significant threat to public safety."

49. Berkley has misrepresented the scope of insurance coverage under the Primary Policy by providing an unreasonable interpretation of the Exclusion and by dismissing all other reasonable interpretations of the Primary Policy.

## **BERKLEY DID NOT PROVIDE NOTICE TO DOE, AS IT WAS REQUIRED TO DO, WHEN IT UNILATERALLY ADDED A COMMUNICABLE DISEASE EXCLUSION TO THE PRIMARY POLICY UPON RENEWAL, PURPORTING TO LIMIT COVERAGE**

50. Berkley has been Doe's general liability insurance carrier for several years. Initially, the policies Berkley sold to Doe did not include a Communicable Disease Exclusion. For example, the 2019 Policy No. HHS 8573556-12 (the "2019 Policy"), for the policy period October 1, 2019 to October 1, 2020, did not contain the Exclusion. A copy of the 2019 Policy is attached hereto as Exhibit L.

51. Berkley unilaterally decided to add the Exclusion, upon renewal, to the 2020 Policy No. HHS 8572556-13 (the "2020 Policy"), for the policy period October 1, 2020 to October 1, 2021. A copy of the 2020 Policy is attached hereto as Exhibit M.

52. Berkley failed to notify Doe that it had added the Exclusion, purporting to limit coverage, to the 2020 Policy.

53. Berkley then issued the Primary Policy the following year, during the 2021 policy period. As it did with the 2020 Policy, Berkley again added the Exclusion to the Primary Policy, and again failed to notify Doe about the Exclusion and its limiting effect on coverage.

54. Berkley deliberately and unilaterally made a material change to coverage by adding the Communicable Disease Exclusion in October 2020 to the 2020 Policy and in October 2021 to the Primary Policy, without notifying Doe of this change.

55. In so doing, Berkley falsely represented to Doe that the terms of its renewal policies were substantially the same as Doe's expiring policies, even though the 2019 Policy did not contain the Exclusion.

56. Without proper notice to Doe of the material change in coverage resulting from Berkley's unilateral addition of a Communicable Disease Exclusion, Berkley cannot rely on the Exclusion as a basis to deny Doe coverage under the Policies.

## **COUNT ONE**

### **DECLARATORY JUDGMENT**
### **Berkley's Duty to Defend Under the Primary and Excess Policies**

57. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 56 as though fully set forth herein.

58. Berkley has a duty to defend Doe for covered occurrences under the Policies.

59. Should the Primary Policy be exhausted, Berkley is obligated under the Excess Policy, which follows form to the Primary Policy, to provide a defense and pay defense costs for Doe in the Underlying Action until the policy limits of the Excess Policy are exhausted.

60. The Underlying Action alleges a claim against Doe for bodily injury caused by an occurrence that falls within the coverage grant of the Policies.

61. The Communicable Disease Exclusion does not bar coverage for the Underlying Action by its own terms or because the Communicable Disease Exclusion is capable of multiple, reasonable interpretations or is otherwise ambiguous.

62. Berkley has an obligation under the Policies to defend Doe in the Underlying Action.

63. In addition, even if the Communicable Disease Exclusion did apply to Legionnaires' disease – which it does not – Berkley nevertheless is precluded from relying on the Exclusion as a bar to coverage. This is because Berkley failed to notify Plaintiff of

its reduction in coverage in the renewal process for both the 2020 Policy, sold in October 2020, and the Primary Policy, sold in October 2021, when it added the Exclusion unilaterally upon policy renewal.

64. Pursuant to N.Y. Insurance Law § 3426, Berkley is bound by the greater coverage as originally issued – that is the coverage afforded under the 2019 Policy that does not include the Exclusion.

65. Therefore, Berkley cannot rely upon the Exclusion in the Primary Policy to deny coverage.

66. Plaintiff is incurring substantial costs and expenses in connection with the defense of the Underlying Action that are covered under the Policies.

67. All premiums due and owning under the Primary Policy and Excess Policy have been paid.

68. All applicable conditions to coverage under the Primary Policy have been satisfied.

69. Berkley has breached its obligations as set forth in its respective Policies by disputing its obligations to pay in full Plaintiff's defense costs arising out of or in connection with the Underlying Action.

70. By reason of the foregoing, an actual and justiciable controversy exists between Doe and Berkley regarding Berkley's duty to provide a complete defense to Doe and to pay Doe's defense costs in full with respect to the Underlying Action.

71. Justice requires that this Court determine and settle by declaration Berkley's duty to provide a complete defense to Doe in the Underlying Action and to pay

in full the costs for defense of the Underlying Action. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

72. Plaintiff seeks a declaration from this Court that, pursuant to the terms of the Primary Policy, Berkley is obligated to pay Plaintiff's costs of defense of the Underlying Action, until such time as the Primary Policy limits are exhausted through the payment of indemnity costs.

73. Plaintiff also seeks a declaration that, after the Primary Policy is exhausted, or, immediately in the event it is determined that the Primary Policy does not cover the damages sought in the Underlying Action, Berkley is obligated, under the terms of the Excess Policy, to pay Plaintiff's costs of defense of the Underlying Action, until such time as the Excess Policy limits are exhausted.

## COUNT TWO

### DECLARATORY JUDGMENT
**Berkley's Duty to Indemnify Under the Primary and Excess Policies**

74. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 73 as though set forth fully herein.

75. Berkley is obligated under the Policies to pay in full Plaintiff's liabilities (subject only to policy limits), including without limitation all sums paid for any settlement or judgment, arising out of or in connection with the Underlying Action.

76. Berkley has wrongfully denied its obligation to pay on behalf of Plaintiff any liability it incurs in the Underlying Action by way of settlement or judgment.

77. By reason of the foregoing, an actual and justiciable controversy exists between Plaintiff and Berkley regarding its duty to pay on behalf of Plaintiff any liability it

may face in the Underlying Action by way of settlement or judgment, subject only to policy limits.

78. Justice requires that this Court determine and settle by declaration Berkley's duty to pay on behalf of Plaintiff any liability it may face in the Underlying Action by way of settlement or judgment, subject only to policy limits. Such a judicial determination is necessary and appropriate at this time under the circumstances alleged.

79. Plaintiff thus is entitled to a judgment declaring that, pursuant to the terms of the Primary Policy, Berkley is obligated to pay on behalf of Plaintiff any sums (subject to policy limits) it may become legally obligated to pay in connection with the Underlying Action.

80. Plaintiff is also entitled to a judgment declaring that, pursuant to the terms of the Excess Policy, Berkley is obligated to pay on behalf of Plaintiff any sums in excess of one million (subject to policy limits) it may become legally obligated to pay in connection with the Underlying Action.

## COUNT THREE

### BREACH OF CONTRACT
### Berkley's Duty to Defend Under the Primary Policy

81. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 80 as though set forth fully herein.

82. Doe has performed all of its duties consistent with the terms and conditions of the Primary Policy, including paying the premium due thereunder and providing timely notice of the Underlying Action.

83. The Primary Policy is a valid and enforceable contract.

84. The Policy provides coverage for defense costs and obligates Berkley to defend Doe in connection with claims alleging bodily injury caused by an occurrence during the policy period.

85. The Underlying Action alleges bodily injury caused by an occurrence during the policy period.

86. The Underlying Action is covered under the Primary Policy.

87. Berkley has a duty under the Primary Policy to defend Doe in the Underlying Action.

88. Berkley has breached its obligations as set forth in the Primary Policy by denying coverage and refusing to defend Doe and pay Doe's defense costs in the Underlying Action.

89. Doe has incurred and continues to incur defense costs and expenses in the Underlying Action that are covered under the Primary Policy.

90. As a direct and proximate result of Berkley's breach of the Primary Policy, Doe has sustained damages in the amount to be proven at trial.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and against Berkley as follows:

91. With respect to Count I, declaring that:

   (a) Berkley is obligated, under the Primary Policy, to pay in full Plaintiff's costs of defense of the Underlying Action, together with attorneys' fees, costs, and disbursements that Plaintiff has incurred and will incur in this insurance coverage action; and

   (b) Berkley is obligated, under the Excess Policy, to pay in full all costs of defense of the Underlying Action, together with attorneys' fees, costs, and disbursements that Plaintiff has incurred and will incur in this insurance coverage action, after the Primary Policy is

    exhausted or immediately in the event it is determined that the Primary Policy does not cover the damages sought in the Underlying Action;

92. With respect to Count I, reasonable attorneys' fees and the costs and disbursements of this action, pre- and post-judgment interest, and such other and further relief as this Court may deem just and proper.

93. With respect to Count II, declaring that:

  (a) Berkley is obligated, under the Primary Policy, to pay on behalf of Plaintiff any sums it may become legally obligated to pay in connection with the Underlying Action; and

  (b) Berkley is obligated, under the Excess Policy, to pay on behalf of Plaintiff any sums in excess of one million it may become legally obligated to pay in connection with the Underlying Action;

94. With respect to Count II, reasonable attorneys' fees and the costs and disbursements of this action, pre- and post-judgment interest, and such other and further relief as this Court may deem just and proper.

95. With respect to Count III, compensatory and consequential damages in an amount to be determined at trial, and reasonable attorneys' fees and the costs and disbursements of this action, pre- and post-judgment interest, and such other and further relief as this Court may deem just and proper.

**<u>JURY TRIAL DEMANDED</u>**

Plaintiff hereby requests a trial by jury as to all Counts so triable.

Dated: November 18, 2022
New York, New York

*[signature]*

Steven J. Pudell, Esq.
Dylan G. LaMorte, Esq. (*Pro Hac Vice* Motion forthcoming)
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, New York 10020
Telephone: 973-642-5877
spudell@andersonkill.com
dlamorte@andersonkill.com
*Attorneys for Plaintiff, The Doe Fund, Inc.*