UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE DOE FUND, INC.,

                              Plaintiff,

          -against-

BERKLEY INSURANCE COMPANY,

                              Defendant.

---

22-CV-9852 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff The Doe Fund, Inc. ("Doe") brings this suit against its insurer Defendant Berkley Insurance Company ("Berkley") seeking a declaration from the Court that Berkley has a duty to defend and indemnify Doe in connection with several underlying lawsuits, each currently pending in the New York Supreme Court, Bronx County. Before the Court is (1) Doe's partial motion for summary judgment regarding Berkley's duty to defend and (2) Berkley's cross-motion for summary judgment on the same issue. For the reasons set forth below, Doe's partial motion for summary judgment is GRANTED and Berkley's cross-motion for summary judgment is DENIED.

## BACKGROUND

The following facts are undisputed. This case arises from three underlying actions against Doe currently pending in the New York Supreme Court, Bronx County. ECF No. 44 ("Counter Statement of Facts") ¶¶ 1–2. Doe is a non-profit organization that provides housing and other social services to "people with histories of homelessness, incarceration, and substance abuse." ECF No. 37 ("Pl. Br.") at 4. Doe allegedly owns and operates two properties in the Bronx located at 1325 Jerome Avenue and 1331 Jerome Avenue (the "Doe Properties"). Counter Statement of Facts ¶ 3. Berkley is a commercial insurance provider. *See id.* ¶ 5. Doe purchased a

Commercial Lines Policy from Berkley (the "Policy"), which included coverage for Commercial General Liability and Excess Liability, for the period of October 1, 2021 through October 1, 2022. *Id.* The Policy provides that Berkley will defend and indemnify Doe in any suit for damages based on "bodily injury." *Id.* ¶¶ 6–11. "Bodily Injury" is defined to include "sickness, or disease sustained by a person." *Id.* ¶ 8. The Policy also contains a Communicable Disease Exclusion (the "Exclusion"), which excludes from coverage any "bodily injury" arising from the "transmission of a communicable disease." *Id.* ¶ 12. The Policy does not define "communicable disease." *Id.* ¶ 13.

Between May and October of 2022, numerous individuals allegedly inhaled Legionella bacteria from vapors released by a cooling tower at or near the Doe Properties, and later developed Legionnaires' disease.[1] *Id.* ¶¶ 1–4. As relevant here, residents filed three separate actions against Doe in the New York Supreme Court, Bronx County (collectively, the "Underlying Actions"), alleging that Doe's failure to maintain or cleanse a cooling tower on the Doe Properties resulted in the plaintiffs' Legionnaires' disease. *Id.* ¶¶ 2, 31. The first action, *Long v. The Doe Fund, Inc.*, No. 810555/2022E (N.Y. Sup. Ct. 2022) (the "Long Action"), was filed on July 19, 2022 and alleges that the plaintiffs contracted Legionnaires' disease in spring 2022. ECF No. 36-1 at 4. The second action, *Vazquez v. The Doe Fund, Inc.*, No. 804496/2023E (N.Y. Sup. Ct. 2023) (the "Vazquez Action"), was filed on March 31, 2023 and alleges that the plaintiff contracted Legionnaires' disease in April 2022. ECF No. 36-12 at 5. The third action, *Matthews v. The Doe Fund, Inc.*, No. 806347/2023E (N.Y. Sup. Ct. 2023) (the "Matthews Action"), was

---

[1] Legionnaires' disease is "an acute, sometimes fatal, bacterial disease caused by infection with Legionella pneumophila, not spread by person-to-person contact; it is characterized by pneumonia, high fever, gastrointestinal pain, headache, and sometimes involvement of the kidneys, liver, or nervous system." Legionnaires' Disease, *Dorland's Illustrated Medical Dictionary* (33d ed. 2020).

filed on April 23, 2023 and alleges that the plaintiff contracted Legionnaires' disease in October 2022. ECF No. 36-13 at 5. Berkley denied Doe coverage in each action, arguing that because Legionnaires' disease is communicable, Berkley is exempted from its obligations under the Policy's Exclusion. *See* Counter Statement of Facts ¶¶ 26–27, 29.

Plaintiff filed the current action on November 18, 2022, seeking a declaratory judgment that Berkley is obligated to defend and indemnify Doe in the Long Action. ECF No. 1. On June 30, 2023, Doe filed a Second Amended Complaint, which seeks coverage from Berkley for the Vazquez and Matthews actions. ECF No. 33. Also on June 30, 2023, Plaintiff moved for partial summary judgment on the issue of Berkley's duty to defend Doe in the Underlying Actions and to confirm that the Matthews Action falls within the scope of the Policy. ECF No. 34. Berkley filed a cross-motion for summary judgment seeking a declaration that it has no duty to defend or indemnify Doe in the Underlying Actions. ECF No. 43.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citation omitted). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences in favor of the non-moving party. *Schwebel v. Crandall*, 967 F.3d 96, 102 (2d Cir. 2020); *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)).

## DISCUSSION

Because there are no disputes of material facts between the parties, the only issue before the Court is whether Legionnaires' disease is a communicable disease such that Berkley is exempt from defending and indemnifying Doe in the Underlying Actions. For the reasons explained below, the Court finds that based on the plain and ordinary meaning of the term "communicable disease," Legionnaires' disease is not a communicable disease. As such, the Court grants summary judgment in favor of Doe. The Court also notes that because Berkley does not dispute that the Matthews Action is covered by the Policy, the Court need not address Doe's argument on this issue.

4

I.      **The Court Interprets the Policy Under New York Law**

Although the Policy does not contain a choice-of-law provision, the parties agree that New York law applies here. *See* Pl. Br. at 9; ECF No. 45 ("Def. Br.") at 8 n.7. In New York, insurance policies are interpreted by traditional rules of contract interpretation. *See Daileader v. Certain Underwriters at Lloyd's London - Syndicate 1861*, No. 22-CV-5408 (PGG), 2023 WL 3026597, at *9 (S.D.N.Y. Apr. 20, 2023), *aff'd sub nom.,* 2023 WL 7648381 (2d Cir. Nov. 15, 2023). Under New York law, "it is well established that courts determining a dispute over insurance coverage must first look to the language of the policy." *Id.* (cleaned up).

"As with the construction of contracts generally, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Match Grp., LLC v. Beazley Underwriting Ltd.*, No. 22-CV-4629, 2023 WL 3647370 (LGS), at *3 (S.D.N.Y. May 25, 2023) (internal quotation marks omitted). "Determining whether a contract is ambiguous is an issue of law for the courts to decide" and "provisions in a contract are not ambiguous merely because the parties interpret them differently." *Id*. (cleaned up). "Any ambiguity in the terms of an insurance policy must be construed in favor of the insured and against the insurer." *Univ. of Pittsburgh v. Lexington Ins. Co.*, No. 13-CV-335 (KBF), 2016 WL 7174667, at *3 (S.D.N.Y. Dec. 8, 2016) (cleaned up); *see also Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 129 (2d Cir. 2006) (holding that under New York law, if any provision in an insurance policy is ambiguous, it is construed in favor of finding coverage for the insured).

II.     **Plaintiff is Entitled to Summary Judgment**

A.  **"Communicable Disease" Has a Precise Meaning**

The Policy's Exclusion is unambiguous. Although the Exclusion does not define "communicable disease" and the parties disagree on the definition of "communicable disease,"

the meaning is "not made ambiguous simply because the parties urge different interpretations."

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 94 (2d Cir. 2021) (quoting

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)).

"Communicable disease" has a "definite and precise meaning." *See Callahan v. Glob.*

*Eagle Ent. Inc.*, No. 18-CV-8343 (PKC), 2019 WL 2325903, at *2 (S.D.N.Y. May 30, 2019)

(cleaned up) ("A contract is unambiguous if the contract language has a definite and precise

meaning and concerning which there is no reasonable basis for a difference of opinion."). "In the

absence of guidance from the policy language, courts ask whether a body of law or an

established custom or usage provides a definition." *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*,

880 F.3d 64, 69 (2d Cir. 2018). Further, "it is common practice for courts of [New York] State to

refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *10*

*Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2011).

The Court understands the plain and ordinary meaning of "communicable disease" to be

a disease transmitted from one individual or animal to another. Numerous sources support this

definition. For instance, the Oxford English Dictionary defines "communicable disease" as a

disease "that can be transmitted directly or indirectly from one person or animal to another."

Communicable Disease, *Oxford English Dictionary*,

https://www.oed.com/dictionary/communicable_adj?tab=meaning_and_use#8772868 (last

updated July 2023). Likewise, Cambridge Dictionary states that a "communicable disease" is one

"that can be given from one person to another." Communicable Disease, *Cambridge Dictionary*,

https://dictionary.cambridge.org/us/dictionary/english/communicable-disease (last visited Mar. 22, 2024).[2]

The Court also takes judicial notice of definitions provided by medical dictionaries, which further support its understanding of "communicable diseases." *See Welch v. Ayala*, No. 19-CV-3455 (NRB), 2023 WL 5387551, at *3 n.4 (S.D.N.Y. Aug. 22, 2023) (quoting *Veras v. Jacobson*, No. 18-CV-724 (KMK), 2022 WL 2133842, at *2 n.4 (S.D.N.Y. June 14, 2022)) ("The Court may (and hereinafter does) take judicial notice of medical terms using online medical dictionaries."). Dorland's Illustrated Medical Dictionary defines "communicable disease" as one "transmitted from one individual to another, either by direct contact or indirectly by means of a vector or fomites." Communicable Disease, *Dorland's Illustrated Medical Dictionary* (33d ed. 2020); *see also* Communicable Disease, *Attorneys' Dictionary of Medicine*, (Matthew Bender ed., 2023) ("A disease which is caused by parasites or, more specifically, by bacteria and is readily transmitted from person to person, directly or through some intermediate agent, by the transfer of the causative agent.").

---

[2] The Court notes that one dictionary, Merriam-Webster, defines "communicable disease" as "an infectious disease (such as cholera, hepatitis, influenza, malaria, measles, or tuberculosis) that is transmissible by contact with infected individuals or their bodily discharges or fluids (such as respiratory droplets, blood, or semen), by contact with contaminated surfaces or objects, by ingestion of contaminated food or water, or by direct or indirect contact with disease vectors (such as mosquitoes, fleas, or mice)." Communicable Disease, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/communicable%20disease (last updated March 8, 2024). Because the majority of dictionary and medical dictionary definitions limit "communicable diseases" to those spread between humans and/or animals, the Court does not find that this single definition renders the term ambiguous. However, even if the Court were to determine that "communicable disease" is ambiguous, it would nonetheless find for Doe because, as stated *infra* Section I, "ambiguity in the terms of an insurance policy must be construed in favor of the insured and against the insurer." *Univ. of Pittsburgh*, 2016 WL 7174667, at *3.

Berkely contends that the "plain and ordinary meaning of . . . 'communicable disease'" is "any disease that is communicable," relying in part on *Plaza v. Gen. Assur. Co*, 664 N.Y.S.2d 444 (1st Dept 1997). Def. Br. at 11. Then, citing Merriam-Webster's dictionary, Berkely defines "communicable" as "'capable of being communicated', *i.e.*, transmittable." *Id*. However, the *Plaza* case involved human immunodeficiency virus ("HIV"), a disease that is clearly transmissible person to person, unlike Legionnaire's disease. *See Plaza*, 664 N.Y.S.2d at 444. As such, the court was not confronted with the legal issue here. And, the court provided no support for this definition, nor did it define "communicable" in the way Berkley has. Furthermore, as stated above in Note 2, even if the Court were to credit these definitions and find that they supported rendering "communicable disease" as ambiguous, the Court would nonetheless find in Plaintiff's favor.

**B. Legionnaires' Disease Is Not a Communicable Disease**

Unlike a communicable disease, Legionnaires' disease is not transmitted from individual to individual. *See* Legionnaires' Disease, *Dorland's Illustrated Medical Dictionary* (Legionnaires' disease is "not spread by person-to-person contact"); Transmission of Legionnaire's Disease, *Attorneys' Dictionary of Medicine* ("Transmission is usually through breathing water vapor or mist contaminated with *Legionella* . . . [t]he disease is not transmitted from infected individuals."); Legionnaires' Disease and Legionella, *New York State Department of Health* (June 2023), https://www.health.ny.gov/diseases/communicable/legionellosis/ ("A person diagnosed with Legionnaires' disease is not a threat to others who share office space or other areas. Legionella bacteria are not spread from one person to another person."); Legionellosis, *World Health Organization* (Sept. 6, 2023), https://www.who.int/news-room/fact-sheets/detail/legionellosis ("To date, there has been no reported direct human-to-human

transmission" of Legionella). Neither party disputes that Legionnaires' disease is transmitted via water vapor or mist and not from person to person.

Relying on its erroneous definition of "communicable disease," Berkley asserts that Legionnaires' disease is a communicable disease based on (1) New York state law; (2) the New York City Health Code; and (3) an Order from the Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"). *See* Def. Br. at 12. Berkley's arguments are without merit.

First, Berkley's claim that New York State Law and the New York City Health Code "designated [Legionellosis][3] as a communicable disease" is false. *See id*. Chapter 1, Part 2.1 of the New York State Department of Health Sanitary Code (the "Sanitary Code") states that, as used in Chapter 1, "the term infectious, contagious or communicable disease, shall be held to include the following diseases," and proceeds to list over sixty different diseases, including Legionellosis. 10 C.R.R.-N.Y. § 2.1. Far from "explicitly designat[ing]" Legionellosis as a communicable disease, the Sanitary Code instead provides a list of diseases that could be an infectious, contagious *or* communicable disease. *See* Def. Br. at 12. Indeed, as Plaintiff identifies, numerous other diseases on the list are not communicable. *See* Pl. Br. at 14.

Likewise, the New York City Health Code does not designate Legionellosis as a communicable disease, and instead merely names it among a long list of "Diseases and Conditions of Public Health Interest That Are Reportable." *See* N.Y.C. Health Code § 11.03. As neither list explicitly defines Legionellosis as a communicable disease, both fail to support Berkley's argument.

---

[3] Legionellosis is a term used to describe "any of several illnesses caused by infection with species of *Legionella*," including Legionnaires' disease. Legionellosis, *Dorland's Illustrated Medical Dictionary*.

Finally, Berkley cites to a May 22, 2022 Order that the Commissioner of the DOHMH issued to Doe as owner of the Doe Properties, which states that the DOHMH "received multiple reports of legionellosis, a communicable disease reportable to the Department." Def. Br. at 12; ECF No. 47-6 at 1. Although Berkley is correct that the DOHMH referred to Legionellosis as a communicable disease in its May 22, 2022 Order, the Court finds that this single source is insufficient to counter the numerous authorities the Court cited that establish that Legionnaire's disease/Legionellosis is not communicable.

Accordingly, because the Court finds that Legionnaire's disease does not fall into the Policy's Exclusion, Doe's motion for partial summary judgment on Berkley's duty to defend Doe in the Underlying Actions is GRANTED and Berkley's cross-motion for summary judgment is DENIED.

## CONCLUSION

For the reasons set forth herein, Doe's motion for partial summary judgment is GRANTED and Berkley's cross-motion for summary judgment is DENIED.

The parties are ORDERED to meet and confer regarding settlement and file a joint status letter with the Court no later than **April 19, 2024**. The letter shall confirm that the parties conferred regarding settlement and state whether all parties consent to be referred to the Court's Mediation Program or a settlement conference before the Magistrate Judge.

The Clerk of Court is directed to terminate ECF Nos. 34 and 43.

Dated:  March 26, 2024
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge